**STATE of Missouri ex rel. Bill WOODS et al., Relators,**

v.

**The Honorable Frank D. CONNETT, Jr., Judge of the Circuit Court, Fifth Judicial Circuit of Missouri, Division Number Three, Respondent.**

No. 58802.

Supreme Court of Missouri, En Banc.

July 14, 1975.

Ronald M. Sokol, Public Defender, Fifth Judicial Circuit of Mo., Theodore M. Kranitz, Kranitz & Kranitz, Richard W. Mason, St. Joseph, for relators.

Richard A. Heider, Pros. Atty., St. Joseph, for respondent.

BARDGETT, Judge.

This is an original action in prohibition and involves the question of whether or not respondent, a circuit judge, proceeded under the correct statutes when he convened a special grand jury in Buchanan County, and the validity of some twenty-eight indictments returned by that grand jury on May 31, 1974.

Pursuant to the indictments, warrants were issued for the arrest of relators on June 3, 1974. On June 5, 1974, or shortly thereafter, relators, as defendants in circuit court, filed motions to dismiss or quash the indictments alleging, inter alia, that the grand jury was not drawn and selected pursuant to § 540.020 which relators contend applies to Buchanan County.

A hearing was held on the motions by the trial court; the court made findings of fact and conclusions of law; but, prior to entering its order overruling the motions to quash and dismiss, afforded relators time to file a petition for writ of prohibition to prohibit the circuit court from proceeding to trial on the pending indictments. Relators applied to the Missouri Court of Appeals, Kansas City district, for a writ of prohibition on July 3, 1974, and a stop order was issued; but on August 7, 1974, the petition was denied without a hearing.

Relators filed the instant petition in this court on September 3, 1974. Our provisional rule in prohibition issued and the case has been briefed and argued.

Relators contend that § 540.020 is the statute under which grand juries in Buchanan County, a second-class county, must be convened. Admittedly, the grand jury was not convened pursuant to § 540.020 but rather under §§ 495.010–495.030.

Section 495.010 applies, by its terms, to "counties of this state constituting *a judicial circuit* which have not less than seventy-five thousand nor more than two hundred thousand inhabitants and which contain a *city* or part of a city *of more than seventy-five thousand inhabitants* . .." (Emphasis supplied.)

Section 540.020, relating to grand juries and their proceedings, is a general statute applicable to the convening of grand juries in all counties to which another particular statute does not apply.

With respect to this case, the first question is whether, in 1974, Buchanan County satisfied the provisions of § 495.010 which require that it (a) constitute a judicial circuit and (b) contain a city or part of a city of more than 75,000 inhabitants. There is no question but what Buchanan County satisfies the other provisions of § 495.010.

For many years Buchanan County constituted a judicial circuit in itself. See § 478.-093, V.A.M.S.1969, Vol. 27, p. 268, and prior revisions thereof. In 1969 the general assembly changed the county makeup of certain circuits and enacted § 478.087, RSMo 1969, V.A.M.S. (H.C.S.H.B. 145, Laws of Mo.1969, pp. 554–555), which is as follows: "Circuit No. 5—Circuit number five shall consist of the counties of Buchanan, Andrew and Clinton." At the time the instant grand jury was convened, the fifth judicial circuit still consisted of the three counties noted and, therefore, Buchanan County was not a county constituting a judicial circuit.

The official U.S. census statistics show that St. Joseph, Missouri, which is and has been the largest city in Buchanan County, to have had a population in excess of 75,000 from 1900 through 1960. The 1970 U.S. census shows St. Joseph to have a population of 72,748. *Official Manual, State of Missouri*, 1973–1974, p. 1506. There is no other city in Buchanan County that has a population in excess of 75,000.

Section 1.100, RSMo 1969, as amended 1971, provides that the population of any political subdivision of this state "for the purpose of representation *or other matters*" is determined on the basis of the last previous decennial census of the United States. (Emphasis added.) The effective date of the census for purposes other than ascertainment of salaries is July 1 of the year next following the census year. The 1970 census for purposes other than salaries was effective July 1, 1971. Respondent argues that § 1.100 appears to be limited to representation and salary matters in individual counties and that the decennial population figures are therefore not applicable to statutes pertaining to the convening and regulation of grand juries.

Section 1.100(1) applies, by its terms, to certain specific situations and "other matters". Section 1.100(2) provides that this statute is applicable to "[a]ny law which is limited in its operation to counties, cities or other political subdivisions, having a specified population . . ." and provides that such a political subdivision, except for a city not within any county, which later acquires the requisite population comes within such a law as well as those in that category at the time the law was passed.

■ The court holds that § 1.100 is applicable to laws which designate a procedure for convening grand juries by utilizing specified population figures and that the official census figures of the last decennial census are generally controlling. Sections 71.160–71.180, RSMo 1969, V.A.M.S., authorize a special census of a city or town and provide that the special census results shall be the legal census of such city or town for all purposes whatsoever under the constitution and laws of this state. There was no special census in St. Joseph prior to the convening of the instant grand jury.

Respondent contends that St. Joseph acquired additional territory and population by annexation in 1972 which increased its population to in excess of 77,000. Relators agree that such is the case but contend that the official census figures nevertheless con-

trol on the question of the applicability of a particular statute which uses population as its criterion for use in the counties of this state.

■ Grand juries are an important part of the criminal justice system of this state and the people are entitled to have a grand jury convene and proceed under the appropriate statute. To permit the applicability of a statute to depend upon opinions of parties, even though they be in agreement, or evidence as to the population of a city or county as of a particular time, would not be conducive to the regularity, certitude, or validity of grand juries, their proceedings, or indictments returned by them.

■ When population is one of the criteria, it is necessary that there be an official document which can be readily referred to by courts, prosecutors, and others charged with the responsibility for convening and participating in grand jury matters. The official U.S. census is such a document and has been recognized as such by the legislature of this state in § 1.100.

■ The court holds that, except for the special census provisions of § 71.160, et seq., the last previous decennial census of the United States is controlling with respect to the population criteria set forth in statutes providing for the convening of grand juries in the counties of this state.

■ Buchanan County did not contain a city with a population in excess of 75,000 according to the decennial census of 1970 nor did it constitute a judicial circuit as of the time this grand jury was convened.

The court holds that §§ 495.010–495.030, the statutes under which the instant grand jury was convened, did not apply to Buchanan County. Section 540.020, RSMo 1969, is the statute that is applicable to Buchanan County grand juries.

Respondent contends that no error was committed in refusing to dismiss the instant indictments even if the grand jury was convened under an inapplicable statute because §§ 540.060 and 540.070, RSMo 1969, limit the grounds for challenge to a grand jury.

Section 540.060 provides:

"Any person held to answer a criminal charge may object to the competency of anyone summoned to serve as a grand juror, before he is sworn, on the ground that he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecutor, and has been summoned or bound in a recognizance as such; and if such objection be established, the person so challenged shall be set aside."

Section 540.070 provides:

"No challenge to the array of grand jurors, or to any person summoned as a grand juror, shall be allowed in any other cases than such as are specified in section 540.060."

*State v. Bleekley*, 18 Mo. 428 (1853) supports respondent's position. At the time *Bleekley* was decided, no person could be prosecuted for an indictable offense except by an indictment returned by a grand jury. Art. XIII, § 14, Mo.Const.1820. This was changed by Art. II, § 12, Mo.Const.1875, to allow for prosecution by information as well as by indictment.

Sections 540.060 and 540.070, quoted supra, were then sections 2 and 3 of Art. III, Practice & Proceedings in Criminal Cases, RSMo 1845, p. 863, and were relied on by the court in *Bleekley* in holding that the defendant could not question the manner of summoning grand jurors.

Bleekley was indicted at the October term, 1852, of the Circuit Court of Holt County. At the April term, Bleekley filed a plea in abatement alleging that the grand jury which found the indictment had not been summoned according to the statutes applicable to Holt County. The circuit court denied the plea; Bleekley was convicted by a jury and appealed contending

the trial court erred in overruling his plea in abatement.

The grand jury in *Bleekley* was selected and impaneled under the general law regulating grand jurors which law was not applicable to Holt County. This court noted that chapter 45, § 48, R.S.1845, required that whenever a person charged with an offense is confined in jail two months before the regular term of the circuit court, the jailer must, without delay, inform the judge of such court who must cause a special term to be held for the trial of the prisoner. This court noted also that chapter 45, § 51, authorized the circuit judge to order a grand jury to be summoned at such special term.

The court then considered the right to a speedy trial and the power of the court to afford such trial under the statutes with respect to the court's power to convene a grand jury, saying at 431:

> "Now give the effect to the statute concerning jurors, or, as it is called, the 'Uniform Jury Law,' passed in 1851, for the government of some twenty-five counties in this state, where there are upwards of one hundred, which the defendant's counsel contends for in this case, and we must virtually deprive the courts from ever holding a special term for criminal business, in the counties under this 'Uniform Jury Law;' for no grand jury can be summoned at such terms—no indictment found; and the prisoner must still remain in jail, though it is more than two, or even more than four months, to the next regular term.
>
> "The legislature never designed this; they never anticipated such an event; they supposed all objection to juries, either grand or petit, must, under the laws of the state, be made at the time when about to be sworn, and for the causes in the statute mentioned. The court, then, very properly, sustained the demurrer to the plea in abatement filed herein."

As noted supra, an accused could not be tried in this state for an indictable offense except upon indictment by a grand jury until the constitution was changed in 1875. With that background, it is readily understandable why this court in 1853 did not abate the indictment. It appears that the court believed the criminal justice system would be brought to a halt or that there would be unacceptable delays in the charging process which would seriously and adversely affect an accused's right to a speedy trial. This situation no longer exists. Persons may now be charged by informations which do not require grand jury action.

In the instant case, as in *Bleekley*, the grand jury was convened under a statute that did not apply to the county in which the grand jury was convened. Consequently, there is no issue concerning substantial compliance with an applicable statute, as the applicable statute was not used at all. There is no longer any compelling reason why this court should allow wholly inapplicable statutes to be used in the convening of grand juries.

■ This court is of the opinion, contrary to *Bleekley*, that §§ 540.060 and 540.070 were not intended to foreclose objection to indictments where wholly inapplicable statutes are used in the convening of a grand jury if the objection on that ground is timely made prior to trial.

To the extent that *Bleekley* approves the use of an inapplicable statute for convening grand juries in the counties of this state when objections to the indictments are timely made prior to trial, it is overruled.

In *State v. Crane*, 202 Mo. 54, 100 S.W. 422 (1907); *State v. Connell*, 49 Mo. 282 (1872); *State v. Carolla*, 316 Mo. 213, 292 S.W. 721 (1926) and *State v. Hemphill*, 460 S.W.2d 648 (Mo.1970), cited by respondent, this court upheld the validity of indictments against contentions which this court considered to be mere irregularities in the convening, summoning, and makeup of grand

juries. Sections 540.060 and 540.070 were relied upon as the statutory mandate foreclosing such objections. It does not appear in the cases noted *supra* that the grand jury was convened under a totally inapplicable statute. However, that is what happened in the instant case and in *Bleekley* and that is the issue the court rules in this case.

In these circumstances, the court does not consider the cases noted *supra,* other than *Bleekley,* directly in point, and *Bleekley* is overruled.

What then is the status of the instant indictments? There was, at least, a de facto grand jury that did return indictments into the circuit court. The "salutary purpose" of §§ 540.060 and 540.070, as set forth in *Connell, Bleekley* and *Crane, supra,* was to prevent verdicts from being set aside and new trials granted for frivolous and unsubstantial reasons in the matter of selecting a grand jury.

As indicated, the court does not consider the use of an inapplicable statute to be frivolous and unsubstantial any more than the court considers the failure to afford a preliminary hearing prior to the filing of an information to be a frivolous or unsubstantial defect. See *State ex rel. Buresh v. Adams,* 468 S.W.2d 18 (Mo. banc 1971). Nevertheless, if a defendant proceeds to trial without objection to the failure to afford a preliminary hearing, he has waived his right to that hearing and will not be heard to complain of that defect after verdict. *State v. Richardson,* 347 S.W.2d 165, 169 (Mo.1961); *State v. Thomas,* 353 Mo. 345, 182 S.W.2d 534 (1944); *State v. Ferguson,* 278 Mo. 119, 212 S.W. 339 (Mo. banc 1919).

By the same token, had the instant relators proceeded to trial without objection, they would have waived whatever defects that occurred with respect to the grand jury. We say this here in order that the court will not be understood to be allowing objections to grand jury indictments, such as we have here, to be withheld until after convictions and then utilized in an effort to overturn the convictions.

The court holds the indictments in the instant case to be voidable but not void ab initio. The instant motions to dismiss the indictments were timely filed and are not based upon frivolous or unsubstantial grounds.

The use of § 495.010 by the county authorities in this case is understandable for Buchanan County had proceeded under that statute during the time it constituted a judicial circuit and St. Joseph had a decennial census of over 75,000, a period of over forty years. Understandable though it may be, the use of the inapplicable statute cannot be approved, for to do so would, in effect, allow a county to pick from among the various statutes the one it found convenient and disregard the statute which the legislature mandated for use in that county.

It is of paramount importance to the regularity and finality of the progressive steps in our criminal justice system that grand juries be convened and regulated under the statute applicable to the county in question.

The court erred in overruling the relators' motions to quash the subject indictments. In view of the disposition made herein, the other contentions of relators need not be reached.

This court's provisional rule in prohibition should be made absolute. It is so ordered.

All of the Judges concur.